UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM BEESON,                         )<br>                                                     )<br>               Plaintiff,               )<br>                                                     )               1:06-cv-1694-SEB-JMS<br>        vs.                                       )<br>                                                     )<br>MED-1 SOLUTIONS, LLC,            )<br>                                                     )<br>               Defendant.              ) | |

**ENTRY ADDRESSING PENDING MOTIONS**

This cause comes before the Court on the Motion for Partial Summary Judgment [Docket No. 40] filed on August 31, 2007, by Plaintiff, William Beeson; the Cross-Motion for Summary Judgment [Docket No. 57] filed on October 22, 2007, by Defendant, Med-1 Solutions, LLC ("Med-1"); the Motion to Strike Affidavit [Docket No. 62] filed by Plaintiff on November 5, 2007; the Motion to Strike Affidavit of Lambert Genetos [Docket No. 75] filed by Defendant on January 4, 2008; and the Motion to Strike Defendant's Reply Memorandum [Docket No. 76] filed by Plaintiff on January 4, 2008. In his Motion for Partial Summary Judgment, Beeson asserts that Med-1 wrongfully engaged in deceptive acts in the process of collecting a debt from him, in violation of Indiana Law as well as the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692-1692o.  In its Cross-Motion for Summary Judgment, Med-1 argues that no such deceptive acts or violations of the law occurred.  In his Motion to Strike Affidavit, Beeson argues that the Affidavit of Fran Niper is not based on personal knowledge on the

part of the Affiant as required by the federal rules.  In its Motion to Strike Affidavit, Med-1 argues that Lambert Genetos, the Affiant, is not qualified to provide the evidence he gives.  Finally, in his Motion to Strike Defendant's Reply, Beeson asserts that Defendant's Reply in support of its Motion to Strike must be stricken as untimely.  For the reasons detailed in this entry, Plaintiff's Motion for Partial Summary Judgment is <u>DENIED</u>; Defendant's Cross-Motion for Summary Judgment is <u>GRANTED</u>; Plaintiff's Motion to Strike Affidavit is <u>DENIED</u>; Defendant's Motion to Strike Affidavit is <u>GRANTED</u>; and Plaintiff's Motion to Strike Reply is <u>DENIED</u>.

### *Background Facts*

Med-1 Solutions, LLC is an Indiana Limited Liability Company engaged in the business of collecting consumer debts.  Several of Med-1's clients are hospitals, including St. Vincent Hospital ("St. Vincent") in Carmel, Indiana.  Med-1 enters into agreements with its clients to collect debts owed to the clients in return for fees based on the amount recovered.  Pl.'s Br. in Supp. at 2.  Ownership of the debt always remains with the client; Med-1 serves only as a debt collector.  <u>Id.</u>

In July 2005, Plaintiff, William Beeson, agreed in a signed writing to pay medical expenses incurred by his daughter at St. Vincent.  On September 7, 2005, Med-1, acting in the name of and on behalf of St. Vincent, sent Beeson a "Final Notice," which stated

that, if he failed to pay, his account would be referred to a debt collector.[1]  Def.'s Br. in Supp. at 5.  On September 26, 2005, Med-1 followed this "Final Notice" with a letter again written on St. Vincent's behalf captioned "Pre-Collection Agency Review Notice," which stated the balance owed and repeated that failure to pay would result in a referral to a debt collector. Id.  On October 10, 2005, Med-1, acting again on behalf of St. Vincent, sent Beeson a "Collection Agency Referral Notification," informing him that the account, though still owned by St. Vincent, had been referred to a debt collector.  Id.  On November 6, 2005, Med-1 mailed another letter to Beeson, this time in its own name and on its own behalf, advising him that Med-1 "represented" St. Vincent as its debt collector. Id.  All of these letters were mailed and none was returned undelivered or undeliverable. Id.[2]

Because Beeson failed to pay his medical bill, on December 21, 2005, Med-1 filed a small claims complaint against Beeson in state court, in which Med-1 was plaintiff and Beeson was defendant.  Pl.'s Br. in Supp. at 4.  That complaint sought the collection of Beeson's unpaid bill, in the amount of $1,319.94, plus a $20 late fee that had previously been added by St. Vincent, plus $350 in attorney's fees, for a total of $1,689.94.  Def.'s Br. in Supp. at 3.  The Notice of Claim contained a blank for the purpose of entering an

---

[1]This letter also informed him that a twenty dollar late fee had been added to the balance of his debt.   Def.'s Br. in Supp. at 5.

[2]All of this is set out in the Affidavit of Fran Niper and the Supplemental Affidavit of Fran Niper.  Beeson seeks to strike that affidavit, but we dismiss that Motion to Strike as moot.  Therefore, the facts set out in that affidavit are part of the Court's consideration.

interest percentage to be applied to the debt, but Med-1 had left this blank empty, not intending to collect any interest. Id. at 4. Attached to that complaint was a document, referenced in the complaint,[3] entitled "Account Balance for St. Vincent Hospital & Health Care Center." Id. at 6. Beeson and Med-1 settled the small claims dispute, and the complaint was dismissed. Pl.'s Br. in Supp. at 4.

Beeson alleges in the present cause that Med-1's knowing failure to name the real owner of the debt, St. Vincent, as plaintiff in its small claims complaint was a false and misleading act under the FDCPA. Beeson also alleges that Med-1 violated the FDCPA and Indiana law by claiming interest on the debt it collected for St. Vincent. Finally, Beeson alleges that the totality of Med-1's conduct in the collection of Beeson's debt was deceptive, misleading, and unfair, all in violation of the FDCPA. Med-1 denies any and all deceptive or illegal activity.

## *Legal Analysis*

### I.     *Standard of Review*

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a

---

[3]Under "Brief Statement of Plaintiff's Claim," a section of the small claims complaint form, Med-1 wrote "Unpaid Medical Bill (see attached)."

reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enter., Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg,

870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

Courts are often confronted with cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard." Kohl v. Ass'n. of Trial Lawyers of Am., 183 F.R.D. 475 (D.Md.1998). Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective memoranda and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

## II. *Plaintiff's FDCPA and Indiana Law Claims*

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State

action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e). Accordingly, the statute provides specifically that a "[d]ebt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The statute also prohibits a debt collector from holding itself out as having purchased a debt for value. §1692e(12). It also punishes "unfair practices" undertaken by debt collectors, including the "collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." See §1692f(1).

Beeson contends here that Med-1 has (1) misled Beeson with the false statement that it owned the debt; (2) demanded interest in violation of the "unfair practices" provision; and (3) engaged, in totality, in practices that were deceptive and misleading. Pl.'s Br. in Supp. at 10.

When a debt collector is accused of engaging in practices that violate the FDCPA, those practices must be viewed from the "objective standard of an 'unsophisticated debtor.'" Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1060 (7th Cir. 2000). The "key consideration is that the unsophisticated consumer is to be protected against confusion whatever form it takes." Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir. 2000). The Seventh Circuit has rejected the "least sophisticated debtor" standard, remarking that such a standard allows for objective ignorance and imbecility on the part of the fictional debtor *ad absurdum*. See Pettit, 205

7

F.3d at 326; Marshall-Mosby, 205 F.3d at 326. Instead, the objective standard envisions a debtor who, though uneducated in finance, "possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." Petitt, 205 F.3d at 326 (internal citations omitted). Therefore, "a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled," Id., and the "reasonableness element . . . shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters." Gammons v. GC Services Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994).

*A. Med-1's Alleged False Representation*

Beeson claims that Med-1 lied by putting its own name, rather than St. Vincent Hospital's name, in the caption of its small claims complaint. To violate the FDCPA, the use by Med-1 of its own name must have been a "false, deceptive, or misleading representation[]." Moreover, to be deceptive or misleading, it must have been something that would have confused an "unsophisticated debtor." Essentially, therefore, the application of the FDCPA standard to the case at bar comes in two parts: (1) was the statement false; and (2) was the statement confusing and therefore deceptive and misleading?

The relevant facts underlying this case are drawn from the numerous letters that Med-1 sent to Beeson in September, October, and November 2005. These letters make

8

clear that Beeson was informed repeatedly that his debt was being referred, and not sold, to Med-1.[4] They explicitly indicated to Beeson that Med-1 was St. Vincent's representative in the collection of the debt. These letters embody the information Med-1 communicated to Beeson and are therefore indispensable to our analysis of whether the statements by Med-1 were false, deceptive or misleading, in violation of the FDCPA.[5]

In claiming that Med-1 engaged in falsity, Beeson argues that, because the placement by Med-1 of its own name in the caption was a "literally false statement," the Court "need not go any further in its analysis as to whether the consumer was actually confused." Pl.'s Reply at 7. In advancing this argument, Beeson relies on an incomplete portrayal of the facts. Beeson's assertion that the caption equated to a statement that "Med-1 owned the debt" views the facts too narrowly. Med-1 was not representing that it owned the debt when it named itself the small claims plaintiff. On the contrary, Med-1 attached to and thus incorporated in the complaint a bill clearly indicating that St. Vincent owned the debt. In other words, the caption was not false or deceptive because it was not

---

[4]Our review of Med-1's practices draws on facts set out in an affidavit that is subject to a Motion to Strike filed by Beeson. Because, as we discuss below, that motion must be denied, the facts established in the affidavit are part of the record before us and form the basis for our conclusion on the FDCPA claim.

[5]Aside from seeking to exclude the letters through a Motion to Strike, Beeson contends that these letters must be ignored in our assessment of the confusing nature of Med-1's actions, (Pl.'s Br. in Supp. at 12), urging that we look only at the caption on the face of the small claims complaint to determine if Med-1's collection practices were false or misleading. In support of this, Beeson offers case law from another Circuit stating that false statements in pleadings can form the basis for an FDCPA violation. While this may be true, it does not apply here. Pleadings may form the basis of an FDCPA violation, if they are false or misleading, and as we explain, infra, they were not so in our case.

an assertion of ownership of the debt.[6] In view of all the correspondence between Med-1 and Beeson (in which Med-1 repeatedly told Beeson that St. Vincent maintained ownership of the debt), it would be unreasonable to characterize, on the basis of the caption of the complaint, Med-1 as holding itself out as the owner of the debt.  We hold accordingly that Med-1 made no "literally false statement" or any false representation at all.

Based on many of the same facts, we also hold that Med-1's practices were not misleading nor deceptive.  Given the clarity of the letters Med-1 had sent to Beeson, an unsophisticated debtor would have understood that Med-1 was St. Vincent's agent in collecting the amount owed on the medical bill.  An unsophisticated debtor would have further understood that the small claims complaint was part of Med-1's efforts to collect the debt owed to St. Vincent.  The letters proffered in the Affidavit of Fran Niper clearly attest to these facts and have not been substantively disputed.  Beeson's challenge to them is only procedural, by way of a Motion to Strike, which we have denied.  The settled facts

---

[6]Beeson also claims that Med-1's practices violated Indiana Trial Rule 17, which states, "Every action shall be prosecuted in the name of the real party in interest." T.R. 17-A.  Beeson contends that "in order to satisfy Trial Rule 17, all Med-1 needed to do in the Beeson Small Claims Complaint was simply to identify itself as the agent for St. Vincent's Hospital." Pl.'s Br. in Supp. at 6.  This argument is unavailing.  The fact that Med-1 put its own name on the caption, rather than the name of St. Vincent Hospital, was not a false representation because Med-1 was not representing that it owned the debt that was the subject of the claim.  Moreover, assuming that Med-1 did, in fact, violate Indiana Trial Rule 17, nothing about its mistake would have made its debt collection practice confusing or misleading to the unsophisticated consumer, in light of the totality of the complaint, which included a copy of the bill indicating St. Vincent's ownership of the debt, as well as the correspondence between Med-1 and Beeson.  Beeson sought no independent relief based on the Rule 17 claim, making that argument doubly unhelpful to him here.

therefore show that Beeson's claims under the FDCPA cannot survive and that Med-1 is entitled to summary judgment.

*B. Med-1's Alleged Demand of Interest on Beeson's Debt*

Beeson's original agreement with St. Vincent, entitled "Acknowledgment of Financial Responsibility," stated generally that Beeson would be "responsible for any court costs, reasonable attorney fees and interest as allowed by Indiana Statute . . . ." Pl.'s Reply at 12. When Med-1 filed its small claims complaint, it included in its Notice of Claim this provision: "plus interest from _____, at the rate of _____% . . . ." Def.'s Br. in Supp. at 4. Plaintiff alleges that these statements, taken together, led him to believe that Med-1 would add a claim for interest on the judgment it sought to recover in small claims court.

As mentioned previously, the FDCPA punishes the "collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." See §1692f(1). Beeson contends that Med-1 violated this provision as well as an Indiana statute that prohibits debt collectors from adding interest to the debts they collect. Pl.'s Reply at 13.

His argument fails, however, in the face of the following factors: (1) Med-1 left the interest space blank on the Notice of Claim; (2) the small claims complaint never mentioned interest; (3) no letter or bill given to Beeson ever mentioned interest; and (4)

Med-1 never attempted to collect interest and in fact stated directly that it would not collect interest on Beeson's debt.  Given these undisputed facts, we conclude with no difficulty, first, that no interest was ever charged, and, second, that an "unsophisticated debtor" would have known that no interest was being assessed.  Certainly, had Med-1 written "no interest" in the blank on the Notice of Claim, rather than leaving it empty, its intention would have been clearer.[7]  But such a statement was not necessary to save an "unsophisticated debtor" from confusion.  Leaving the blank empty communicated with requisite clarity that no interest was or would be added, especially in light of the letters stating that no interest would be charged.  Accordingly, Med-1 committed no violation of the "unfair practices" provision of the FDCPA, and Beeson cannot prove that Med-1 violated any law prohibiting the addition of interest to a debt by a debt collector.  Beeson's view that these facts indicate a desire on Med-1's part to collect interest qualifies as a "peculiar interpretation" of Med-1's letters and its small claims complaint.  Gammons, 27 F.3d at 1257.  Because Beeson will be unable to satisfy the legal elements of this claim, summary judgment in favor of Med-1 is mandated.

*C.  The Totality of Med-1's Actions*

Beeson was informed repeatedly through the correspondence from both St. Vincent and Med-1 that Med-1 was acting as a debt collector for St. Vincent, and thus as

---

[7]This is what Beeson urges was necessary to comply with the law.  Pl.'s Response to Motion to Strike at 2-3.

the Hospital's agent, and not as the owner of the debt,[8] and that Med-1's involvement was on a "referral" basis and not as a result of St. Vincent having sold the debt to Med-1. Given the frequency and clarity of these assertions in the correspondence, an unsophisticated debtor would not have been confused by Med-1's practices. Nothing in the facts indicates that Med-1 had any intention to mislead Beeson. Med-1 made every effort to identify itself as a debt collector and not the owner of the debt. Hiring lawyers and filing a claim against Beeson were simply part of the agreement Med-1 made with St. Vincent to undertake its debt collection responsibilities. Med-1 assured Beeson that it "represented" St. Vincent in the suit and that the suit was for an "Account Balance for St. Vincent." Viewing this situation as a whole, a debtor with rudimentary knowledge of the financial world and reasonable intelligence would not have been confused or misled. The totality of Med-1's actions simply does not rise to the level of a violation of the FDCPA, and Med-1 is entitled to summary judgment on this claim as well.

### III. *Plaintiff's Motion to Strike Affidavit of Fran Niper*

Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 602 delineate the form an affidavit must take. Rule 56(e) provides, in pertinent part, "A supporting or

---

[8] As Beeson points out, in subsequent small claims complaints against other debtors, Med-1 has clarified that it was suing as the "agent" of St. Vincent. Beeson says the law requires them to do this. Pl.'s Br. in Supp. at 6. While it likely would have been clearer to Beeson if Med-1 had followed this practice, doing so was not essential to complying with the FDCPA.

opposing affidavit must be made on personal knowledge . . . and show that the affiant is competent to testify on the matters stated." Rule 602 provides, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Fed.R.Ev. 602. In his Motion to Strike of November 5, 2007, Beeson asserts that "Fran Niper . . . has not in his affidavit set out sufficient facts to establish that he is competent to testify as [to] what, if any, correspondence was sent by St. Vincent's Hospital." Pl.'s Motion to Strike at 1.

Med-1 contends that "the affidavit and its exhibits are admissible" and that "Beeson's argument to the contrary is frivolous because [his] counsel deposed Niper on this topic and, thus, knows that Niper possesses personal knowledge of the information in his affidavit." Def.'s Br. in Supp. at 4. Alternatively, Med-1 produces a Supplemental Affidavit of Fran Niper, attached to its Response to the Motion to Strike, which it asserts corrects any alleged deficiencies.

Beeson is correct that the original affidavit does very little to establish Fran Niper's personal knowledge with regard to the matters to which he attests. The sum total of the foundation he attempted to establish was this: "I am an attorney employed by Med-1 Solutions, LLC ('Med-1'). I was employed in that capacity at all times relevant to this suit." Aff. of Fran Niper at 1. This, in our view, is insufficient under the Rule 56(e) and Rule 602 standards to establish his personal knowledge of all of the facts he thereafter described in his affidavit.

However, the Supplemental Affidavit of Fran Niper added the following bases for his personal knowledge: (1) "As in house counsel, I have personal knowledge regarding the manner in which letters are issued by Med-1 as a letter-vendor to debtors on behalf of St. Vincent Hospital . . ."; and (2) "In my capacity as in house counsel for Med-1, I have personal knowledge regarding the content of letters that are sent by Med-1 to debtors in efforts to collect unpaid accounts." Supplemental Aff. of Fran Niper at 1.

The supplemental affidavit sufficiently establishes that Fran Niper had personal knowledge of all of the facts to which he attested. While the original affidavit was inadequate, because the corrections found in the supplemental affidavit do not present any new evidence and the gaps apparently were more fully filled in in his deposition and there is no indication that Beeson has been unfairly prejudiced by any of this, we accept the supplemental affidavit submitted, even though leave was not sought from or given by the Court in the first instance. Because the supplemental affidavit is admitted and overcomes the initial deficiencies, Beeson's Motion to Strike is denied as moot.

### IV.  *Defendant's Motion to Strike Affidavit of Lambert Genetos*

Med-1 asserts that the Affidavit of Lambert Genetos should be stricken because "the opinions contained within it are irrelevant to the main issue in this case: whether the letters sent to Plaintiff by Med-1 would be confusing . . ." and because "it is not admissible under the standards set forth in Federal Rule of Evidence 702 and . . . <u>Daubert</u>

v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993)." Def.'s Reply at 9.

The proper application of Rule 702 and the Daubert standard has two prongs. A court must "determine whether (1) the proposed witness would testify to valid scientific, technical, or other specialized knowledge and (2) his testimony will assist the trier of fact." Ammons v. Aramark Uniform Services, Inc., 368 F.3d 809, 816 (7th Cir. 2004) (internal citations omitted). The first prong "evaluates the reliability of the testimony," while the second "evaluates the testimony's relevance." Id. Therefore, the relevance of Genetos's testimony should be evaluated less as a separate alleged defect than as an aspect of the testimony under a Daubert analysis.

Beeson introduces the Affidavit of Lambert Genetos to define the "standard of care" usually taken by a debt collector in indicating whether interest attaches to a debt. Genetos offers as his qualification to opine on this matter as an expert that "he is an attorney licensed to practice law in the State of Indiana." Aff. Of Lambert C. Genetos at 9. Without something more, this is insufficient to establish the "specialized knowledge" or technical or scientific background needed to qualify Mr. Genetos as an expert.[9]

Were we to accept his status as an expert, his opinion would probably be one that

---

[9]Beeson asserts in his Response to the Motion to Strike that "Genetos testifies in his Affidavit that" he: (1) has been practicing for thirty-seven years, (2) has limited his practice to consumer and commercial creditors; (3) has provided collection services to banks and other organizations; (4) is highly regarded as a debt collector; (5) has been a lecturer in the area of debt collection; (6) and that he is a member of numerous professional organizations related to debt collection and bankruptcy. Pl.'s Response at 2. Unfortunately, none of this appears in Genetos's Affidavit, and Beeson submits no supplemental affidavit or other supporting document to substantiate these assertions.

would assist a factfinder. The opinion he offers relates to whether Med-1's failure to insert anything in the "interest" blank on its Notice of Claim was sufficient to confuse Beeson, or an unsophisticated debtor. Genetos asserts that Med-1 failed to adhere to the industry "standard of care" because it should have written "without interest" or "with no interest thereon" to clarify that no interest was being charged, rather than simply leaving the form blank. Aff. of Lambert Genetos at 12. In response, Med-1 argues that "his opinion would not assist the trier of fact in determining whether the letters sent by Med-1 would be confusing to an unsophisticated consumer." Def.'s Reply at 9.

 Mr. Genetos's opinion is, however, relevant to that determination because it gives some idea of an industry standard. It is important to note that, even if his opinion were admitted to gauge whether or to what extent the blank was confusing, such confusion would have been cured or otherwise overcome, in light of the extensive, perfectly clear statements in this regard contained in the correspondence between Med-1 and Beeson such that an unsophisticated debtor would not have been confused as to the existence of a claim for interest on the debt. Med-1's consistent indication that interest would not be charged and its repeated efforts to inform Beeson that no interest would be charged in any event overcomes Genetos's opinions regarding only the blank left in the rhetorical paragraphs of the small claims court complaint. For the above stated reasons, Defendant's Motion to Strike the Affidavit must be granted.

## *V. Plaintiff's Motion to Strike Defendant's Reply*

Beeson's Motion to Strike Defendant's Reply in Support of Motion to Strike argues that Med-1's Reply Brief should be stricken for two reasons: (1) it was untimely filed under Local Rule 7.1 and Federal Rule of Civil Procedure 6; and (2) it "contains impermissible and newly raised arguments that are irrelevant to the Affidavit of Lambert Genetos." Pl's Motion to Strike at 1.[10]

With regard to the first argument, Med-1 rejoins that Local Rule 7.1, as informed by Federal Rule of Civil Procedure 6, does not count Saturdays, Sundays, or holidays in computing the seven-day time limit for the filing of a reply, and that, without counting those days, Med-1's Reply was timely. Def.'s Response to Pl.'s Motion to Strike at 2. Federal Rule 6 states, in pertinent part, that in computing a response time, a court must "[e]xclude Saturdays, Sundays, and legal holidays when the period is less than 11 days." Fed.R.Civ.P. 6(a)(2). Because the time limit for a Reply is seven days (thus fewer than eleven), we must compute the time from December 18 to January 3 without counting any Saturdays, Sundays, or holidays. Such a computation reaches only seven days, so Med-1's Reply was timely.

Beeson's second ground for striking the Reply is somewhat more convincing. Med-1's Reply in Support of its Motion to Strike does consume a good deal of space making arguments concerning the FDCPA dispute. Nevertheless, it also responds to

---

[10] Although this second proposition is logical, Beeson cites no authority in support of it.

Beeson's contentions regarding the Motion to Strike. Certain sections of the Reply may represent a misuse of the Reply opportunity, but others were proper argumentation, and "[t]he way to point out errors in a . . . brief is to file a reply brief, not to ask a judge to serve as editor." Custom Vehicles, Inc. v. Forest River, Inc., 464 F.3d 725 (7th Cir. 2006). Because a substantial part of the Reply remains proper, none of it shall be stricken based on Beeson's second argument.[11] Beeson's Motion to Strike Med-1's Reply thus is denied.

## *VI. Conclusion*

Having considered each party's arguments, we conclude that there is no genuine issue of material fact requiring a trial, and that the facts clearly establish that Med-1 committed no violation of the FDCPA or Indiana law in its dealings with Beeson as laid out in Beeson's Complaint. Furthermore, the Affidavit of Lambert Genetos fails to establish his qualifications to give expert testimony under Daubert, and the Supplemental Affidavit of Fran Niper provides sufficient additional evidence of his personal knowledge of the facts adduced to satisfy the requirements of the federal rules. Finally, Med-1's Reply in Support of Motion to Strike was timely filed and presented sufficient relevant argumentation to be acceptable. Therefore, Plaintiff's Motion for Partial Summary Judgment is DENIED; Defendant's Cross-Motion for Summary Judgment is GRANTED;

---

[11] It should be noted, however, that none of the arguments Med-1 sets out in that Reply are necessary to the Court's decision to strike the Affidavit of Lambert Genetos. That affidavit was facially insufficient.

Plaintiff's Motion to Strike Affidavit is <u>DENIED</u>; Defendant's Motion to Strike Affidavit is <u>GRANTED</u>; and Plaintiff's Motion to Strike Reply is <u>DENIED</u>.  Final judgment shall enter in accordance with this entry.

IT IS SO ORDERED.

Date: _____09/25/2008_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Eric D. Johnson
KIGHTLINGER & GRAY
ejohnson@k-glaw.com

Nicholas Ward Levi
KIGHTLINGER & GRAY
nlevi@k-glaw.com

Robert E. Stochel
HOFFMAN & STOCHEL
res@reslaw.org

Peter A. Velde
KIGHTLINGER & GRAY
pvelde@k-glaw.com

Glenn S. Vician
BOWMAN, HEINTZ, BOSCIA & VICIAN
bhbv2@netnitco.net